United States District Court
Southern District of Texas
**ENTERED**
December 21, 2016
David J. Bradley, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| DANIEL E. DAVIS and | § | |
| CASCABEL CATTLE COMPANY, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 1:15-cv-159 |
| | § | |
| UNITED STATES OF AMERICA; | § | |
| TOM VILSACK, Secretary of Agriculture; | § | |
| KEVIN SHEA, Administrator, Animal and | § | |
| Plant Health Inspection Service, U.S.D.A.; | § | |
| GINA MCCARTHY, Administrator of the | § | |
| U.S Environmental Protection Agency; | § | |
| ERNIE MORALES, Chairman, Texas | § | |
| Animal Health Commission; and | § | |
| DEE ELLIS, Individually, | § | |
|     Defendants. | § | |

**ORDER ADOPTING MAGISTRATE
JUDGE'S REPORT AND RECOMMENDATION**

This case concerns alleged violations of the Administrative Procedure Act (hereafter "APA").  Daniel E. Davis and Cascabel Cattle Company (collectively "Plaintiffs") allege their rights have been violated through implementation of the Fever Tick Eradication Program (hereafter "the Program"), a cooperative effort between the United States and Texas to eliminate bovine babesiosis from the U.S. cattle population.  Plaintiffs allege that the Federal Defendants have misapplied applicable Program rules and failed to follow applicable Program rules, all in violation of the APA.

On February 5, 2016, the United States of America; Tom Vilsack, Secretary of the U.S. Department of Agriculture; Kevin Shea, Administrator of the U.S. Department of Agriculture, Animal and Plant Health Inspection Service; and Gina McCarthy, Administrator of the U.S Environmental Protection Agency (hereafter the "Federal Defendants") filed their "Motion to Dismiss and Memorandum in

1

Support" (Docket No. 47), arguing that Plaintiffs' Verified Complaint be dismissed for lack of subject matter jurisdiction due to lack of standing, or alternatively, for failure to state a claim upon which relief can be granted. Docket No. 47 at 3–4. Said motion to dismiss was referred to the Honorable Magistrate Judge Ignacio Torteya (hereafter "Magistrate").

On September 9, 2016, the Magistrate issued his "Report and Recommendation" (hereafter "R&R") (Docket No. 76), recommending that this Court grant the Federal Defendant's motion and dismiss Plaintiffs' Verified Complaint without prejudice for lack of subject matter jurisdiction, pursuant to FED. R. CIV. P. 12(b)(1), or alternatively, for failure to state a claim upon which relief can be granted, pursuant to FED. R. CIV. P. 12(b)(6). This Court extended the deadline to submit objections to the R&R to October 10, 2016. Docket No. 80.

On October 9, 2016, Plaintiffs filed their "Opposition to Magistrate's Recommendation Regarding Federal Defendants' Motion to Dismiss" (Docket No. 83), and on October 28, 2016, the Federal Defendants filed their "Response to Plaintiffs' Opposition to the Magistrate Judge's Report and Recommendation" (Docket No. 84). On November 4, 2016, Plaintiffs filed an "Opposition to Federal Defendants' Response to Plaintiffs' Opposition to Magistrate's Recommendation Regarding Federal Defendants' Motion to Dismiss" (Docket No. 85), wherein Plaintiffs requested this Court either hold its ruling in abeyance to allow for discovery, or permit Plaintiffs to amend their pleadings as appropriate.

After a *de novo* review of the record, this Court orders the following: Plaintiffs' request for abeyance or to amend their pleadings is **DENIED**; the "Magistrate Judge's Report and Recommendation" (Docket No. 76) is **ADOPTED**; the "Federal Defendants' Motion to Dismiss" (Docket No. 47) is **GRANTED**; and Plaintiffs' Verified Complaint (Docket No. 1) is **DISMISSED**, without prejudice, for lack of standing and for failure to state a claim upon which relief can be granted.

However, before any further discussion, this Court must first address what it deems to be a complete lack of professionalism on the part of Plaintiffs' attorney Mr. Joe W. Stuckey, Law Office of Joe W. Stuckey, in responding to the Magistrate's

R&R. It should be noted that the following admonitions and sanctions are limited in scope to Mr. Stuckey, and do not extend to local counsel, Mr. Dennis Sanchez.

## I.   VIOLATIONS OF THE TEXAS LAWYER'S CREED AND RELATED LOCAL RULES

Plaintiffs' objections begin with a statement that they are "extremely disappointed in the subjective conclusions and unsupported recommendations" reached by the Magistrate, and find it "absurd" that "nowhere in the 21,966-word Verified Complaint, together with nine (9) exhibits totaling approximately 50 pages, excluding cover pages, could the Magistrate find a single element of standing, subject matter jurisdiction, and a cause of action . . . ." Docket No. 83 at 2–3. Plaintiffs go on to state that the Magistrate's conclusions are "insane," "grossly in error," and "not worthy of being published by [the District] Court," and that the Magistrate's characterization of one of their claims was *"total bullshit!!!"* (emphasis in original).[1]  *Id.* at 14–15. Plaintiffs also accuse the Magistrate of "lacking in experience" which they then claim accounts for his inability to understand the "complexities" of the present case. *Id.* at 4–5.   Perhaps to avoid further misunderstandings of said "complexities," Plaintiffs then also improperly suggest that this Court initiate an ex parte conversation and "just simply visit with Judge Hanen in the hallway . . . ." *Id.* at 15.

As an initial matter, Plaintiffs' attorney was responsible for pleading a complaint that clearly articulated grounds for standing and subject matter jurisdiction, and further articulated a claim upon which relief could be granted. Neither the Magistrate nor this Court are responsible for dissecting what this Court agrees are "convoluted, repetitive, and conclusory allegations" in order to find evidence of standing, subject matter jurisdiction and a plausible cause of action. *See* Docket No. 76 at 13.  Moreover, no Court considers the length or the complexity

---

[1] Specifically, Plaintiffs claim that the Magistrate wrongly "assert[ed] that Federal Defendants assert that the safety rules [regarding Col-Ral® 42%] apply only to humans." Docket No. 83 at 15. As explained below, the Magistrate explicitly referenced harm to animals in its characterization of Plaintiffs' claim. *See infra* Part III.A.1.

3

of wording in a complaint to constitute evidence that the necessary elements of standing, subject matter jurisdiction, and claims upon which relief can be granted have been properly pled.

Any and all attorneys who come before this Court are required to conduct themselves in accordance with the "Rules of Discipline" found in the Local Rules of the United States District Court for the Southern District of Texas, which require lawyers who practice before the courts in this district to "act as mature and responsible professionals." *See* Appendix A, Rule 1(A). The Court further directs Mr. Stuckey's attention to "The Texas Lawyer's Creed: A Mandate for Professionalism," which explicitly requires the following from attorneys:

1. "[R]ecognize that the position of judge is the symbol of both the judicial system and administration of justice" and "refrain from conduct that degrades this symbol;"

2. "[C]onduct [your]self in Court in a professional manner and demonstrate respect for the Court and the law;"

3. "[T]reat . . . the Court . . . with courtesy and civility;" and

5. Refrain from "engag[ing] in any conduct which offends the dignity and decorum of proceedings."

*See* art. IV, §§1–3, 5 (Mar. 2013), *available at* https://www.texasbar.com/AM/ Template.cfm?Section=Texas_Bar_Journal&Template=/CM/ContentDisplay.cfm&C ontentID=22241. The Court finds that Mr. Stuckey's objections to the Magistrate's R&R violate the Texas Lawyer's Creed and demonstrate a lack of decorum and lack of respect for both the Magistrate and this Court.

Accordingly, Mr. Stuckey is hereby sanctioned and **ORDERED** to pay a fine of One Thousand Dollars ($1,000.00), check to be made payable to "Clerk, U.S. District Court," no later than **January 31, 2017**. Further, Mr. Stuckey is **ORDERED** to complete five (5) hours of ethics training related to any of the following issues: respect for the judiciary, rules of civil procedure and the drafting of pleadings, and/or attorney professionalism and proper decorum. The ethics training

must be completed **no later than June 30, 2017**.  Certificates of completion totaling five (5) hours are to be filed with the District Clerk's Office so they may be docketed.

## II.   ANALYSIS

Plaintiffs raise a series of objections to the Magistrate's R&R.  As explained below, Plaintiffs' objections present no meritorious basis to set aside the R&R.  The Court notes that Plaintiffs abandoned Counts 4, 5, 9, 10, and 11.   Accordingly, the Court limited its review to the remaining counts.

### A. Administrative Procedure Act Violations

#### 1. Alleged Mischaracterization of Plaintiffs' APA Claims

The Magistrate correctly noted in his R&R that to establish Article III standing:

> [T]he plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Docket No. 76 at 10–11 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal citations and quotations omitted)).

Plaintiffs do not object to the Magistrate's recitation of the law; rather Plaintiffs argue that the Magistrate mischaracterized their claims, resulting in an erroneous conclusion that Plaintiffs lacked standing under the APA and that their Verified Complaint should therefore be dismissed for lack of subject matter jurisdiction, pursuant to FED. R. CIV. P. 12(b)(1), or alternatively, for failure to state a claim, pursuant to FED. R. CIV. P. 12(b)(6).  *See* Docket No. 83 at 11–17.  The crux of Plaintiffs' "mischaracterization" objection is the erroneous assertion that their

case is indistinguishable from *Texas v. United States*, 86 F. Supp. 3d 591 (S.D. Tex.), *aff'd*, 809 F.3d 134 (5th Cir. 2015), *as revised* (Nov. 25, 2015), *cert. granted,* 136 S. Ct. 906, 193 L. Ed. 2d 788 (2016).  In *Texas v. United States*, Judge Andrew S. Hanen held that twenty-six states and state officials had standing under the APA to challenge whether the United States and the Department of Justice could validly implement the "Deferred Action for Parents of Americans and Lawful Permanent Residents" program in the absence of notice-and-comment rulemaking.  Plaintiffs argue that they "carefully studied" the rules for APA standing as explained by Judge Hanen, and thus pled "typical violations of the APA."  Docket No. 83 at 3–4. Plaintiffs object to the following "mischaracterizations" of their claims as summarized by the Magistrate:

- Plaintiffs claim that the Federal Defendants have not promulgated substantive rules pertaining to Co-Ral® 42% Coumaphos Flowable Insecticide;

- Plaintiffs claim that the Federal Defendants injured them by failing to abide by the safety rules associated with Co-Ral® 42% Coumaphos Flowable Insecticide labels; and

- Plaintiffs claim that the Federal Defendants enforced unwritten guidelines as if they were regulations, and otherwise failed to act in accordance with the APA.

*See* Docket No. 76 at 26, 30–31; *see also* Docket No. 83 at 11, 14–15.

Firstly, a side-by-side comparison of Plaintiffs' own summary of its APA claims with the Magistrate's characterizations illustrates that no mischaracterization occurred:

| Magistrate's Characterizations | Plaintiffs' Characterizations |
|---|---|
| Plaintiffs claim that the Federal Defendants have not promulgated substantive rules pertaining to Co-Ral® 42% Coumaphos Flowable Insecticide. Docket No. 76 at 26. | "Plaintiffs assert that the Co-Ral® 42% Coumaphos Flowable Insecticide has not specifically been approved according to the APA, although the 25% version has been approved." Docket No. 83 at 13 (citing 9 C.F.R. § 72.13(b)(1)). |
| Plaintiffs claim that the Federal Defendants injured them by failing to abide by the safety rules associated with Co-Ral® 42% Coumaphos Flowable Insecticide labels.  Docket No. 76 at 30.  Specifically, "Plaintiffs state that the Federal Defendants have required total-immersion dipping, which involves inhalation and ingestion, and that inhalation and ingestion of Co-Ral® 42% Coumaphos Flowable Insecticide is contrary to its EPA-approved label." *Id.* | "Plaintiffs further assert that they have shown injury by the Federal Defendants violations of the APA."  Docket No. 85 at 4.  The daily actions of USDA and APHIS [Animal and Plant Health Inspection Service] violate the APA causing injury to Plaintiffs who are a part of the regulated public." *Id.* "Plaintiffs allege that the Defendants' proposed application of Co-Ral® 42% Flowable Insecticide by total immersion subjecting cattle to both ingestation [sic] and inhalation of the Co-Ral® liquid mixture is contrary to the Co-Ral® label as approved by the U.S. Environmental Protection Agency." Docket No. 1 at 17. |
| Plaintiffs claim that the Federal Defendants enforced unwritten guidelines as if they were regulations, and otherwise failed to act in accordance with the APA.  Docket No. 76 at 31. | "Plaintiff do not contest agency regulations 9 C.F.R. §§ 72.1–72.25.  Rather, Plaintiffs challenge all other unwritten rules, policies, guidelines, actions, and omissions . . . which are not covered by 9 C.F.R. §§ 72.1–72.25." Docket No. 85 at 4.  "Federal Defendants illegally enforce guidelines such as the USDA-APHIS-VS Guidance as if they were rules." *Id.* |

Secondly, Plaintiffs failed to establish that this case is indistinguishable from *Texas v. United States*, namely because they failed to show that they have been injured by the implementation of a program pursuant to the APA, in the absence of notice-and-comment rulemaking.    Plaintiffs assert that "the Co-Ral® 42% Coumaphos Flowable Insecticide has not specifically been approved according to the APA . . . ." Docket No. 83 at 13.  Said assertion is incorrect.  Specifically, pursuant to 9 C.F.R. § 72.13(b), "[a]pproved proprietary brands of coumaphos (Co-Ral®)"

include a "25 percent wettable powder or a flowable form . . . ."  The only existing flowable form of Co-Ral® contains 42% of the active ingredient coumaphos; there has never been a flowable form containing 25% of active ingredient. *See* Docket No. 65 at 8; *see also* Docket No. 47 at 16 n.10.  Moreover, the Department of Agriculture, Animal and Plant Health Inspection Service (hereafter "APHIS") distinguishes between the "25 percent wettable powder" and the "flowable form" as evidenced by APHIS's 1984 rulemaking which proposed adding the flowable form of Co-Ral® to the approved list of pesticides used in dipping cattle for interstate movement. *See* 49 Fed. Red. 33134-01 (Aug. 21, 1984).  In relevant part, the proposed rule states:

> In addition to the 25 percent wettable powder, coumaphos is now available in a flowable form. Veterinary Services of APHIS has been requested to grant permitted dip status to this form of coumaphos. When prepared in accordance with the regulations, the solutions from both the wettable powder and the flowable form of coumaphos are identically the same chemical.

*Id.*  The "flowable form" referenced in the above rule necessarily is the 42% flowable form of Co-Ral®.  Plaintiff's allegation that "Co-Ral® 42% Coumaphos Flowable Insecticide" was not approved through notice-and-comment rulemaking is incorrect.

Plaintiffs also have not established that the Federal Defendants are using the insecticide contrary to its label.  As the Magistrate correctly notes, the label does not prohibit the dipping or full-immersion dipping of cattle. Docket No. 76 at 30. Moreover, "immersion in a chemical solution in a dip vat" is explicitly allowed under 9 C.F.R. § 72.25.  Although § 72.25 also authorizes "spraying with a chemical solution using a spray-dip machine or a hand-held sprayer," the Texas Administrative Code dictates that cattle **"shall be dipped via submersion"** in a vat, and that hand spraying is limited to areas where a vat is not reasonably available, when livestock are unable to undergo vat dipping due to size or physical condition, and when otherwise specifically authorized by a representative of the Texas Animal Health Commission.  *See* 4 Tex. Admin. Code § 41.8(b)(1)(G)–(I). Nothing in the relevant regulations entitles Plaintiffs to hand spraying, *see* Docket No. 83 at 12–13, nor deprives agencies of their discretion to select a particular method of dipping.

Finally, Plaintiffs have not established that the Federal Defendants have enforced unwritten guidelines as if they were regulations, and otherwise failed to act in accordance with the APA. In great detail, the Magistrate correctly explains that federal and state statutes provide authority for the Program, directly contradicting Plaintiffs' assertions that the Federal Defendants have failed to comply with the APA or other federal laws. Docket No. 76 at 32–38 (citing 7 U.S.C. §§ 8301-8317, Texas Agriculture Code Annotated §§ 167.001–167.144 (West 2015), 9 C.F.R. §§ 72.1–72.25, and 4 Texas Administrative Code, ch. 41 (West 2016)).

Ultimately, Plaintiffs' erroneous allegations asserting the non-approval of "Co-Ral® 42% Coumaphos Flowable Insecticide" and the Federal Defendants' improper use of full-immersion dipping are completely contradicted by state and federal law, and therefore have no basis in law or fact. *See id.* at 29. Because the only injury alleged by Plaintiffs addresses violations of the APA, Plaintiffs have not established an "injury" necessary for standing.

The Court notes that a plaintiff bringing a claim under the APA must also establish "prudential standing." Because Plaintiffs have failed to establish Article III standing, however, the Court declines to address prudential standing.

## 2. Alleged Failure to Apply "Favorable Presumption"

Plaintiffs next argue that the Magistrate erred in not granting them a "favorable presumption" of standing because they seek review of agency action under the APA's procedural provisions. Docket No. 83 at 7–8. Citing *Mendoza v. Perez*, 754 F.3d 1002, 1010 (D.C. Cir. 2014), Plaintiffs argue that since they are "asserting a procedural rights challenge, they need not show the agency action would have been different had it been consummated in a procedurally valid manner." *Id.*

Plaintiffs misapply *Mendoza*. In relevant part, *Mendoza* states:

The requirements for standing differ where, as here, plaintiffs seek to enforce procedural (rather than substantive) rights. When plaintiffs challenge an action taken without required procedural safeguards, they must establish the agency action threatens their concrete interest. It is not enough to assert a

mere general interest in the alleged procedural violation common to all members of the public. *Once that threshold is satisfied,* the normal standards for immediacy and redressability are relaxed. Plaintiffs need not demonstrate that but for the procedural violation the agency action would have been different.

754 F.3d at 1010 (internal quotations omitted) (emphasis added).

Plaintiffs have not met the required "threshold" because they have failed to "establish [that an] agency action threatens their concrete interest." More specifically, Plaintiffs have failed to demonstrate any injury from an alleged procedural violation—such as a failure to promulgate rules by notice-and-comment rulemaking—because the insecticide and guidelines at issue were in fact promulgated by note-and-comment rulemaking. Accordingly, Plaintiffs are not entitled to any favorable presumption of standing.

### 3. Alleged Failure to Review the Merits of APA Claims

Finally, Plaintiffs argue that their asserted APA violations constitute a basis for standing and an argument on the merits. Docket No. 83 at 5. Accordingly, Plaintiffs object to any recommendation by the Magistrate regarding standing without considering the merits of their claims. *Id.*

Contrary to the Plaintiffs' comments that the R&R contained unsupported and subjective conclusions, the Magistrate devoted thirty-two pages to "review[ing] all of Plaintiffs' claims in order to identify the claims which actually appl[ied] to the Federal Defendants, and actually qualif[ied] as causes of action within the subject matter jurisdiction of this Court." *See* Docket No. 76 at 14, 15–47. The Magistrate acknowledged that the issue of causation, which is required for Article III standing, was intertwined with the merits of the Plaintiffs' case, thereby warranting review of said merits rather than dismissal for lack of jurisdiction. *Id.* at 24. However, the Magistrate also correctly noted that where claims are "wholly insubstantial and frivolous," they need not be reviewed. *Id.* (citing *Southpark Square Ltd. v. City of Jackson, Miss.*, 565 F.2d 338, 341 (5th Cir. 1977) (quoting *Bell v. Hood*, 327 U.S. 678, 681–82 (1946))).

The Magistrate's assessment that Plaintiffs' claims are wholly insubstantial and frivolous stems from Plaintiffs' failure to establish any injury caused by the implementation of the Program in a manner which violates the APA.    The Magistrate's decision not to review Plaintiffs' claims was correct.

### B. Alleged Constitutional Violations

Plaintiffs' objections regarding their Fourth, Fifth, and Fourteenth Amendment claims amount to nothing more than conclusory statements that Plaintiffs have standing to pursue their constitutional claims because they have demonstrated standing under the APA. *See* Docket No. 83 at 17–18. As previously explained, Plaintiffs failed to demonstrate how any particular injury they allegedly suffered was fairly traceable to the Federal Defendants and a violation of their constitutional rights.    Additionally, the Fourteenth Amendment applies to the actions of state actors, and Plaintiffs have not established that any alleged unequal treatment between them and other ranchers is unrelated to a legitimate state interest. Docket No. 76 at 42 (citing *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439–40 (1985)).

Finally, even assuming that Plaintiffs properly established standing, their claims must be dismissed for failure to state a claim upon which relief can be granted. "In order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations." *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).

### C. Miscellaneous Allegations

Much like their objections regarding their constitutional claims, Plaintiffs argue that "[a]s soon as this Court recognizes the law established by Judge Hanen, and agrees that Plaintiffs have standing and federal jurisdiction under the APA, and have stated all claims, all of the mentioned and unmentioned claims by Plaintiffs will be duly addressed." Docket No. 83 at 19. Plaintiffs essentially assert that standing as to their "miscellaneous claims" is dependent upon standing for

their APA claims. *See id.* To the extent this interpretation is accurate, Plaintiffs have failed to establish standing on their miscellaneous claims because they have failed to establish standing on their APA claims. Moreover, as the Magistrate pointed out, Plaintiffs have failed to identify the individuals responsible for causing the injuries complained of in the miscellaneous allegations, and have offered nothing more than conclusory statements that they have been aggrieved by the Program. *See* Docket No. 76 at 45–48.

### D. Alleged Violations of the Freedom of Information Act (FOIA)

Plaintiffs' do not raise any FOIA objections; rather, they appear to argue that they are entitled to standing based on their FOIA claims. Docket No. 83 at 20. According to Plaintiffs, the U.S. Department of Agriculture partially responded to Plaintiffs' FOIA requests. Docket No. 1 at 445 (¶ 109). Plaintiffs also allege, however, that their request was denied. *Id.* at 45 (¶ 111); Docket No. 83 at 20.

"The Freedom of Information Act creates a private cause of action for the benefit of persons who have requested certain records from a public agency and whose request has been denied." *United States v. Richardson*, 418 U.S. 166, 204, 94 S. Ct. 2940, 2960, 41 L. Ed. 2d 678 (1974) (citing 5 U.S.C. § 552(a)(3)). "Jurisdiction in a FOIA suit is based upon the plaintiff's showing that an agency has (1) improperly (2) withheld (3) agency records." *Goldgar v. Office of Admin., Exec. Office of the President*, 26 F.3d 32, 34 (5th Cir. 1994) (citing *Kissinger v. Reporters Comm. for Freedom of the Press,* 445 U.S. 136, 150, 100 S.Ct. 960, 968, 63 L.Ed.2d 267 (1980)). Plaintiffs who do not allege any improper withholding of agency records fail to state a claim for which a court has jurisdiction under the FOIA. *Goldgar*, 26 F.3d at 34.

Here, Plaintiffs admit that their FOIA requests have been "partially" responded to. They present no evidence that their requests were denied or that agency records have been "improperly withheld." The Court notes that the 20-day deadline to respond to a FOIA request has long since passed, *see* Responding to Requests,   U.S.   Department   of   Justice,   *available   at*

12

https://www.justice.gov/open/responding-requests.   However, the Court also notes that the response time may be extended when, for example, "the request involves a 'voluminous' amount of records that must be located, compiled, and reviewed; or "the [Department of Justice] component [that maintains the records sought] needs to consult with another federal agency or two or more Department of Justice components that have a substantial interest in the responsive information.   *Id.* Ultimately, Plaintiffs conclusory statements fail to plead a FOIA claim that confers jurisdiction on this Court.

### E.  The Court Will Not Hold its Ruling in Abeyance, nor Will it Grant Plaintiffs' Request to Amend its Complaint

Despite insisting that they have properly asserted standing, Plaintiffs request that this Court either hold its ruling in abeyance to allow for discovery, or permit Plaintiffs to amend their pleadings as appropriate.  Docket No. 85 at 2.

Plaintiffs present no persuasive arguments in favor of abeyance or amendment.  The Federal Defendants' motion to dismiss was filed on February 5, 2016.  In the months since then, Plaintiffs have filed a 38-page response and memorandum in opposition to the Federal Defendants' motion to dismiss (Docket No. 55), a motion for extension of time to file a sur-reply in opposition to the motion to dismiss (Docket No. 67), a 14-page sur-reply to the Federal Defendants' motion to dismiss (Docket No. 72), a motion for extension of time to respond to the Magistrate's R&R (Docket No. 79), a 21-page objection to the R&R (Docket No. 83), and a 9-page objection to the Federal Defendants' response to Plaintiffs' original objections to the R&R (Docket No. 85).   During the above stated chronology, Plaintiffs were granted multiple extensions to prepare their filings and were placed on notice of multiple deficiencies in their pleadings.  That Plaintiffs now seek to amend their Verified Complaint strikes this Court as a desperate attempt to prolong an otherwise incurable complaint.

## III.   CONCLUSION

For the forgoing reasons, the Court orders as follows: Plaintiffs' request for abeyance or to amend their pleadings is **DENIED**; "Magistrate Judge's Report and Recommendation" (Docket No. 76) is **ADOPTED**; the "Federal Defendants' Motion to Dismiss" (Docket No. 47) is **GRANTED**; and Plaintiffs' Verified Complaint (Docket No. 1) is **DISMISSED** without prejudice for lack of standing, pursuant to FED. R. CIV. P. 12(b)(1) and for failure to state a claim, pursuant to FED. R. CIV. P. 12(b)(6). Accordingly, "Plaintiffs' Notice of Voluntary Dismissal of Defendant Ms. Gina McCarthy, Administrator, United States Environmental Protection Agency, in her Official Capacity" (Docket No. 81) is **DISMISSED** as moot.


Signed on this ____21st____ day of ___December___, 2016


_____
Rolando Olvera
United States District Judge